IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RONALD SANTOS,                      )    Civil No. 05-1375-JE
                                    )
              Plaintiff,            )    FINDINGS AND
                                    )    RECOMMENDATION
       v.                           )
                                    )
JO ANNE B. BARNHART,                )
Commissioner, Social Security       )
Administration,                     )
                                    )
              Defendant.            )
_____)


     Roy Linerud
     P.O. Box 1105
     Salem, OR 97308

        Attorney for Plaintiff

     Karin J. Immergut
     U.S. Attorney
     Neil J. Evans
     Asst. U.S. Attorney
     1000 S.W. 3rd Avenue, Suite 600
     Portland, OR 97204-2902


FINDINGS AND RECOMMENDATION - 1

David J. Burdett
Special Asst. U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

        Attorneys for Defendant

JELDERKS, Magistrate Judge:

        Plaintiff Ronald Santos brings this action pursuant to 42

U.S.C. § 405(g) seeking judicial review of a final decision of

the Commissioner of Social Security (the Commissioner) denying

his claim for disability insurance benefits (DIB) under 42

U.S.C. §§ 401-33.  The Commissioner's decision should be

affirmed.

## PROCEDURAL BACKGROUND

        Plaintiff has filed several applications for benefits.

His first application, which was denied on October 19, 1992,

was never appealed.

        Plaintiff's second application was filed on February 11,

1994.  After that application was denied initially and on

reconsideration, plaintiff timely requested a hearing before

an Administrative Law Judge (ALJ).  After a hearing, ALJ John

Madden, Jr. issued a decision dated April 3, 1996, finding

that plaintiff was not disabled within the meaning of the

Social Security Act (the Act).  In the present action,

plaintiff does not contest that decision.

FINDINGS AND RECOMMENDATION - 2

David J. Burdett
Special Asst. U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

        Attorneys for Defendant

JELDERKS, Magistrate Judge:

        Plaintiff Ronald Santos brings this action pursuant to 42

U.S.C. § 405(g) seeking judicial review of a final decision of

the Commissioner of Social Security (the Commissioner) denying

his claim for disability insurance benefits (DIB) under 42

U.S.C. §§ 401-33.  The Commissioner's decision should be

affirmed.

## PROCEDURAL BACKGROUND

        Plaintiff has filed several applications for benefits.

His first application, which was denied on October 19, 1992,

was never appealed.

        Plaintiff's second application was filed on February 11,

1994.  After that application was denied initially and on

reconsideration, plaintiff timely requested a hearing before

an Administrative Law Judge (ALJ).  After a hearing, ALJ John

Madden, Jr. issued a decision dated April 3, 1996, finding

that plaintiff was not disabled within the meaning of the

Social Security Act (the Act).  In the present action,

plaintiff does not contest that decision.

FINDINGS AND RECOMMENDATION - 2

Plaintiff filed the application for DIB that is presently at issue on November 17, 1999.  In that application, plaintiff alleged that he had been disabled since August 16, 1998, because of musculoskeletal disorders and problems of mental awareness.  This application was denied initially on January 10, 2000, and was denied on reconsideration on April 5, 2000.  Based upon plaintiff's timely request, a hearing was held before ALJ John Madden, Jr., on December 5, 2001.  On February 8, 2002, ALJ Madden issued a decision finding that plaintiff was not disabled within the meaning of the Act because he could perform his past relevant work as an "odd-job worker."  In the alternative, the ALJ found that plaintiff could perform other jobs that exist in substantial numbers in the national economy.  That decision became the final decision of the Commissioner on June 2, 2002, when the Appeals Council denied plaintiff's request for review.

Plaintiff appealed the Commissioner's denial of his application for benefits to the United States District Court for the District of Oregon.  In a Findings and Recommendation filed on November 7, 2003, the Honorable Magistrate Judge Janice Stewart found that the decision to deny the application for benefits was not supported by substantial evidence in the record.  She recommended that the decision be reversed and that the action be remanded to the Agency for further proceedings.  The Findings and Recommendation was referred to

the Honorable Anna Brown, who adopted it, reversed the
Commissioner's decision, and remanded the action for further
proceedings.

A third hearing was held before ALJ Madden, Jr. on
March 8, 2005, in Bend, Oregon. Plaintiff, who was
represented by counsel, and Eileen Linciocome, a Vocational
Expert (VE), testified at the hearing.

In a decision dated May 23, 2005, ALJ Madden, Jr. again
found that plaintiff was not disabled within the meaning of
the Act because he retained the functional capacity required
to work as a marking clerk, a seedling sorter, and a photocopy
machine operator. That decision became the final decision of
the Commissioner, and plaintiff appeals from the decision in
the present action.

## FACTUAL BACKGROUND

Plaintiff was born on April 12, 1952, and was 53 years
old when the ALJ issued the latest decision denying his
application for DIB. He earned a GED, and attended one year
of college. Plaintiff has work experience as a piper liner,
firefighter, flagger, gas station attendant, landscaper, and
odd-job worker. He last worked in August, 1998, and his
insured status expired on September 30, 1999.

Plaintiff is a Vietnam war veteran. At the time of the
hearing, he testified that he received a 10% service-connected

pension from the Department of Veterans' Affairs (VA), based upon a hearing loss. Plaintiff has been denied service-connected benefits for which he applied based upon alleged back pain and Post Traumatic Stress Disorder (PTSD). At the time of the hearing, plaintiff testified that he used aspirin, Tylenol, and marijuana to treat his pain, but that he would not take prescription pain medications. Plaintiff has been arrested for cultivating marijuana, and was on probation for a time.

Plaintiff alleges that he is disabled by the following combination of impairments:

-chronic pain in the low back area;

-degenerative disk disease of the lumbar spine;

-failed back syndrome following two low back surgeries;

-status post L5-S1 diskectomy with fusion and placement of Steffe plates;

-residual bilateral leg pain;

-right leg cramping;

-difficulty standing;

-left knee failure which prevents plaintiff from walking;

-inability to stand for more than 15 minutes at a time;

-difficulty sitting for extended periods;

-need to frequently lie down;

-anxiety with obsessive features;

FINDINGS AND RECOMMENDATION - 5

-psychogenic pain disorder;

-antisocial personality disorder;

-bilateral hearing loss; and
right foot pain, numbness, and weakness.

## HEARING TESTIMONY

At the hearing following the remand from the District
Court, plaintiff testified that he experiences cramping,
numbness, weakness, and pain in his right leg that makes it
difficult for him to stand and walk.  Plaintiff testified that
his left knee frequently "goes out," that his back "goes out,"
and that he is unable to stand for more than 15 minutes at a
time, has difficulty sitting for extended periods, needs to
lie down frequently, and has hearing loss in both ears.

The ALJ posed a hypothetical describing an individual who
could lift and engage in "push and pull activities" and
lifting in the light work range, could stand 6 hours and sit 6
hours in an 8-hour workday, and could stoop and crouch
occasionally.  The ALJ found a moderate restriction in the
ability to understand, remember, and carry out detailed
instructions; work in proximity of others without being
distracted; interact appropriately with the general public;
get along with co-workers or peers without distracting them;
and set realistic goals or plans independently of others.
The VE testified that a person with these limitations could

perform work as a marking clerk, a seedling sorter, or a photocopy machine operator.

In response to questioning by plaintiff's counsel, the VE testified that an individual who needed to lie down 2 to 3 times during the day for a period of 2 to 15 minutes could not sustain competitive employment.

## STANDARD OF REVIEW

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion."
Andrews, 53 F.3d at 1039.   The court must weigh all of
the evidence, whether it supports or detracts from the
Commissioner's decision.   Martinez v. Heckler, 807 F.2d 771,
772 (9th Cir. 1986).   The Commissioner's decision must be
upheld, however, even if "the evidence is susceptible to more
than one rational interpretation."   Andrews, 53 F.3d at
1039-40.

<h2 style="text-align:center">DISABILITY ANALYSIS</h2>

The ALJ engages in a five-step sequential inquiry to
determine whether a claimant is disabled within the meaning of
the Act.   20 C.F.R. §§ 404.1520, 416.920.   Below is a summary
of the five steps, which also are described in Tackett v.
Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.   The Commissioner determines whether the
claimant is engaged in substantial gainful activity (SGA).
A claimant engaged in such activity is not disabled.   If the
claimant is not engaged in substantial gainful activity, the
Commissioner proceeds to evaluate the claimant's case under
Step Two.   20 C.F.R. § 404.1520(b).

Step Two.   The Commissioner determines whether the
claimant has one or more severe impairments.   A claimant who
does not have such an impairment is not disabled.   If the
claimant has a severe impairment, the Commissioner proceeds to

evaluate claimant's case under Step Three.  20 C.F.R.
§ 404.1520(c).

Step Three.  Disability cannot be based solely on a
severe impairment; therefore, the Commissioner next determines
whether the claimant's impairment "meets or equals" one of the
impairments listed in the SSA regulations, 20 C.F.R. Part 404,
Subpart P, Appendix 1.  A claimant who has such an impairment
is disabled.  If the claimant's impairment does not meet or
equal one listed in the regulations, the Commissioner's
evaluation of the claimant's case proceeds under Step Four.
20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the
claimant is able to perform work he or she has done in the
past.  A claimant who can perform past relevant work is not
disabled.  If the claimant demonstrates he or she cannot do
work performed in the past, the Commissioner's evaluation of
the claimant's case proceeds under Step Five.  20 C.F.R.
§ 404.1520(e).

Step Five.  The Commissioner determines whether the
claimant is able to do any other work.  A claimant who cannot
perform other work is disabled.  If the Commissioner finds
that the claimant is able to do other work, the Commissioner
must show that a significant number of jobs exist in the
national economy that the claimant can do.  The Commissioner
may satisfy this burden through the testimony of a vocational

expert (VE) or by reference to the Medical-Vocational

Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the

Commissioner demonstrates that a significant number of jobs

exist in the national economy that the claimant can do, the

claimant is not disabled.  If the Commissioner does not meet

this burden, the claimant is disabled.  20 C.F.R.

§ 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the

claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the

burden shifts to the Commissioner to show that the claimant

can perform jobs that exist in significant numbers in the

national economy.  Id.

## ALJ'S DECISION

At the first step, the ALJ found that plaintiff had not

engaged in substantial gainful activity since the alleged

onset of disability.

At the second step, the ALJ found that plaintiff's

degenerative disc disease of the lumbar spine and marijuana

dependence were "severe" impairments within the meaning of 20

C.F.R. § 404.1520(c).

At the third step, the ALJ found that these impairments

did not meet or medically equal an impairment in the

"listings," Appendix 1, Subpart P, Regulation No. 4.

The ALJ found that plaintiff retained the functional capacity

> for work in which he sits, stands, or walks for six
> hours total each in an eight-hour day; lifts 10
> pounds frequently and 20 [pounds] occasionally; he
> can occasionally stoop or crouch; he is moderately
> limited in understanding, remembering, and carrying
> out detailed instructions; in working in
> coordination or proximity to others without being
> distracted by them; in interacting appropriately
> with the general public; in setting reasonable goals
> or independently planning, and in getting along with
> coworkers without distracting them or exhibiting
> behavioral extremes.

In assessing plaintiff's capacity, the ALJ found that plaintiff's allegations regarding his limitations were not wholly credible.

At the fourth step, the ALJ found that plaintiff could not perform any of his past relevant work.

At the fifth step, the ALJ found that, though plaintiff's exertional limitations did not allow him to perform the full range of light work, he could perform jobs that existed in substantial numbers in the national economy.  The ALJ cited marking clerk, seedling sorter, and photocopy machine operator positions as examples of such jobs.

## DISCUSSION

Plaintiff contends that the ALJ erred in failing to fully and fairly develop the record, in determining that his right foot condition was not severe, in failing to provide the required support for the conclusion that he was not wholly

FINDINGS AND RECOMMENDATION - 11

credible, and in failing to properly address the statements of third party witnesses.

1. <u>Development of the record</u>

Plaintiff contends that the ALJ failed to fully develop the record concerning his "right foot and leg conditions" and associated symptoms that affect his ability to stand or sit, and in failing to further develop the record concerning his "pain disorder diagnosis" and the extent of his psychological impairments.

I disagree.  Clearly, an ALJ has the duty to fully and fairly develop the record.  <u>See</u>, <u>e.g.</u>, <u>Brown v. Heckler</u>, 713 F.2f 441, 443 (9th Cir. 1983)(per curiam) (ALJ has "special duty" to fully, fairly develop record and to assure that claimant's interests are considered).  However, an ALJ's duty to supplement the existing record arises only when the evidence is ambiguous or the record is inadequate to allow for proper evaluation of the evidence.  <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001).

Here, the voluminous medical record included substantial information concerning the condition of plaintiff's right leg and foot, and provided ample evidence for evaluating the effect of impairments to that area on plaintiff's ability to sustain physical activity.  The record likewise included sufficient evidence as to plaintiff's mental condition.  The

FINDINGS AND RECOMMENDATION - 12

severity of mental impairments is assessed according to the
effect of the impairments on a claimant's ability to function.
Section 12.00(C), Appendix 1, Subpart P, Regulations No. 4.
The record here includes not only substantial evidence both as
to the evaluation of plaintiff's mental condition, but as to
the effect of plaintiff's psychological problems on his
functional capacity.   Though plaintiff disagrees with the
ALJ's assessment of the severity of his right leg and foot
problems and the ALJ's conclusion that plaintiff's marijuana
dependence was his only severe psychological impairment, the
medical record concerning those problems was adequate to allow
for a proper evaluation of plaintiff's physical and mental
problems.   Accordingly, the ALJ did not err by not developing
the record more fully.


2. <u>ALJ's conclusion that plaintiff's right lower extremity</u>
<u>problems are not "severe" impairments</u>

     Plaintiff contends that the ALJ erred in determining that
problems with his right ankle and foot were not severe and in
failing to consider workplace limitations that were caused by
problems in that area.  He asserts that the ALJ "ignored the
history and prior determinations involving Plaintiff's right
leg and foot even though those determinations were based upon
permanent findings," and contends that the ALJ "simply chose
to consider those parts of the record that supported the ALJ's

overall conclusion of denying Plaintiff's benefits."
Plaintiff contends that the ALJ "abused his discretion by
repeatedly determining that the overall record did not support
[plaintiff] when the [he] failed to evaluate the entire
record."

A careful review of the ALJ's decision and the relevant
medical record does not support these contentions.  The ALJ
did not ignore evidence concerning plaintiff's right leg and
foot, but instead assessed the evidence concerning plaintiff's
right leg and foot many times in his decision.  The ALJ noted
that Wayne Kelley, PAC, performed a VA examination on
September 14, 2000, for musculoskeletal complaints, and
observed that reflexes were "absent at the right ankle," and
that "sensation was evidently diminished in the right foot."
The ALJ noted that Kelley had reported that plaintiff was
"able to stand on heels and toes," and had assessed plaintiff
with "moderately diminished endurance and mild alterations in
gait due to fatigue and spasm" in a report that was approved
by Paul Matson, M.D.  The ALJ noted that Gail Sheridan, FNP,
examined plaintiff on January 9, 2003, and also found that
plaintiff could "walk on heels and toes."

The ALJ further noted that James Nelson, M.D., who
examined plaintiff on January 22, 2003, found an absence of
right-ankle reflex, but also found that plaintiff retained a

"normal and non-ataxic gait," and that plaintiff's strength
was intact.

     In his decision, the ALJ observed that on August 1, 2003,
plaintiff reported to a VA employee that he was active, and in
"ok shape," except for his bad back.  He also noted that, in a
visit to Thomas Lucas, M.D., on March 4, 2004, plaintiff
reported that he exercised and walked.

     The ALJ also reviewed the findings of Delmar Greenleaf,
M.D., who examined plaintiff on November 29, 2004.
Dr. Greenleaf reported that plaintiff's strength in the lower
extremities was intact, "as well as with dorsiflexion of the
right and left ankles and great toes," and reported that
plaintiff was able to stand on his toes.  The ALJ also noted
that Dr. Greenleaf reported "an absent reflex at the right
ankle," and that Dr. Greenleaf concluded that plaintiff
could stand eight hours in a day, "or for two hours at a
time . . . ."

     In addition to these more recent assessments, the ALJ
reviewed earlier evidence in the record concerning plaintiff's
leg strength and gait.  He noted that, while Dr. Brennan had
reported an ataxic gait and severe loss of strength in March
1994, "the bracketing examinations of Dr. Newby in 1993 and
July 1994 found strength to be intact, and no gait
abnormalities were reported."  He also noted that, though
Kelley had found plaintiff's leg strength "at 3/5 in September

2000 . . . as Dr. Lahman pointed out, such weakness would be enough to prevent the claimant from walking," and would be "at odds with the lack of atrophy shown by the claimant."  The ALJ added that plaintiff's strength was "again intact" when plaintiff was examined by Dr. Nelson in 2003, and concluded that "the signs reported by Dr. Brennan and Mr. Kelley are very atypical," and that "any resulting conclusions of disability are not consistent with the overall record."

When the record includes contradictory evidence, the ALJ is required to resolve the conflicts, and the ALJ's conclusion regarding such evidence will be upheld if there is more than one rational conclusion. Allen v. Sec'y of Health & Human Servs., 726 F.2d 1470, 1473 (9th Cir. 1984). Here, the record included contradictory evidence as to the severity of the problems with plaintiff's right leg and foot. In evaluating plaintiff's right leg and foot problems, the ALJ did not ignore the relevant medical history or consider only the parts of the record that supported the conclusion that plaintiff did not have a severe impairment. In his decision, the ALJ considered the medical evidence that would support the conclusion that plaintiff had a severe impairment in this area, and considered the evidence that he did not. His conclusion that the medical problems with plaintiff's right leg and foot did not constitute a severe impairment was supported by substantial evidence in the medical record.

3. <u>ALJ's credibility determination</u>

Plaintiff contends that the ALJ erred in finding his description of the limitations caused by his problems with his right foot "unreliable" without providing "any reasons."

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). If a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony concerning the severity of symptoms merely because they are unsupported by objective medical evidence. <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998) <u>citing</u> <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 343 (9th Cir. 1990)(en banc). Unless there is affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. <u>Id.</u>, <u>quoting</u> <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995).

An ALJ rejecting a claimant's testimony may not simply provide "general findings," but instead must identify the testimony that is not credible and the evidence that undermines the claimant's complaints. <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993). In addition, SSR 96-7 requires an ALJ to consider the entire record and to consider several factors, including the claimant's daily activities,

medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms."

Plaintiff here produced medical evidence of an underlying impairment of his right foot and as to other impairments. Accordingly, the ALJ was required to provide clear and convincing reasons for rejecting plaintiff's testimony about the severity of his symptoms, and was required to identify the evidence that undermined plaintiff's testimony as to the effect of his impairments on his ability to function.

The ALJ satisfied this requirement. He noted the results of medical examinations which found that plaintiff had a normal gait, and cited substantial evidence that plaintiff exaggerated his symptoms. The ALJ noted that, in addition to finding that plaintiff's strength and sensation tests were invalid, Dr. Greenleaf "found that he had positive Waddell's signs for overdramization [sic] of symptoms," and reported that plaintiff showed greater movement in his neck when he was out of the examining room than he had when he was being tested. As evidence of exaggeration, the ALJ also cited plaintiff's testimony that he has "massive" nerve damage in his back and legs, though there is no medical evidence supporting that assertion. He noted that, though plaintiff

testified that his back and knee pain were so great that he
could not walk and that his neck pain was so extreme that he
could not use his arms, Dr. Greenleaf reported that plaintiff
had calluses on his hands.  The ALJ cited plaintiff's
"admitted level of activity," and concluded that this activity
was "inconsistent with his allegations of crippling symptoms."
He noted that plaintiff had told Dr. Bellville of a "wide
range of activities" in which he participated after the
alleged date of his onset of disability.  These included
riding a mountain bike, shopping, performing basic cleaning,
paying bills, going on walks, doing beadwork and leather work,
and writing poetry.  The ALJ noted that plaintiff had
performed jobs such as working as a flagger for several
months, "despite the need to stand up to 12 hours a day," and
cited plaintiff's statement to the VA that he survived, in
part, through performing odd jobs.  He noted that plaintiff
stated that he had built a cabin, that he had cared for
several children, that he had described himself as "active,"
and that he had reported looking for rocks and taking his
children fishing several times "despite allegedly being unable
to walk many days, or to raise his hands."  The ALJ also noted
that Frank Lahman, Ph.D., a reviewing psychologist, concluded
that plaintiff overstated his limitations.

    These are clear and convincing reasons, supported by the
record, for concluding that plaintiff's testimony about the

effects of his impairments, including his right leg
impairment, was not wholly credible.

### 4. Other lay witness evidence

Plaintiff contends that the ALJ erred in failing to
properly address the lay witness statement of Richard Gorby, a
Veterans Representative. In her Findings and Recommendation,
Magistrate Judge Stewart noted that Gorby had stated that
plaintiff had behavioral problems that interfered with his
ability to work on a regular basis. In the space following
his "yes" response to a question asking whether plaintiff had
such behavioral problems, Gorby added the notation "totally
screwed up." Magistrate Judge Stewart noted that the ALJ had
failed to address Gorby's observation in his decision denying
plaintiff's application for disability benefits.

In his present decision, the ALJ did not address in depth
Gorby's statement that plaintiff's behavior would interfere
with his ability to work on a regular basis, or his brief
explanatory notation that plaintiff was "totally screwed up."
He likewise did not directly address Gorby's opinion that
plaintiff did not get along with his employer, which was
followed by his notation that plaintiff was "hard to get along
with." Instead, the ALJ simply stated that, because plaintiff
was "shown to be able to perform a reduced range of light
work, he could not be found to be credible," and added that

"[a]s the claimant himself has poor credibility, and for the same reasons, any allegation by third parties implying disability such as that in [the form Gorby completed] must also be discounted."

An ALJ "must give reasons that are germane" for rejecting the statements of a lay witness. Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). Here, to the extent that Gorby's answers on the form he completed might imply that plaintiff is disabled, the ALJ rejected Gorby's statements "for the same reasons" that he found that plaintiff was not wholly credible. Those reasons, as noted above, included plaintiff's ability to engage in activities that were inconsistent with the conclusion that his limitations were disabling.

The ALJ's discussion of his reasons for discounting Gorby's statements was very brief, and a fuller explanation might have been helpful. However, this action need not be remanded for further explanation of the ALJ's reasoning in this regard for two reasons. First, Gorby's statements appeared to primarily address plaintiff's mental problems, including ability to get along with others. These are limitations that the ALJ largely accepted in a residual functional capacity assessment that noted moderate limitations in ability to understand, remember, and carry out detailed instructions, and moderate limitations in the ability to work with others and in interacting with the public. Second, to

FINDINGS AND RECOMMENDATION - 21

the extent Gorby's statements may have implied greater
limitations, those were inconsistent with plaintiff's
activities, which the ALJ discussed in finding that
plaintiff's own testimony was not wholly credible.


**CONCLUSION**

For the reasons set out above, the Commissioner's
decision denying plaintiff's request for disability benefits
should be AFFIRMED, and a judgment should be entered
dismissing this action with prejudice.


**SCHEDULING ORDER**

The above Findings and Recommendation are referred
to a United States District Judge for review.  Objections, if
any, are due _April 16_ , 2007.  If no objections are filed,
review of the Findings and Recommendation will go under
advisement on that date.

A party may respond to another party's objections
within 10 days after service of a copy of the objection.
If objections are filed, review of the Findings and
Recommendation will go under advisement upon receipt of
the response, or the latest date for filing a response.

DATED this _30_ day of March, 2007.

_____
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION - 22